Good morning, your honors. May it please the court. My name is Michael Keneally and I represent AMZN in this action. I'd like to reserve three minutes for rebuttal if I may. The district court committed two errors in denying AMZN's motion to compel arbitration and each independently justifies reversal. First, the court erred in holding that AMZN failed to prove that contents of the 2019 Terms of Service. AMZN's declaration stated unequivocally that AMZN sent the 2019 Terms of Service to plaintiff via email on October 3rd, 2019. And that's a direct quote. Plaintiff has never disputed the truth of that claim. He's never... It's your burden to show that you gave him notice though, right? Yes, your honor. So wouldn't it be possible that you could have that statement that you sent him the updated terms, but the email might have said in the subject line, pizza coupon? Well, I don't think that it's possible that that happened, but I don't think it would matter in this case because of his uncontested obligation under the prior contract from 2016 to keep track of his emails from Amazon and to stay informed of updates. But what if it said pizza coupon and he's allergic to cheese and he can't eat pizza? You're saying he has the obligation to notice that that email is from Amazon and open it at that point? I think under the terms of the 2016 agreement, he does have that obligation. And he has the obligation to stay informed of the terms that are accessible in the app itself when he goes and signs up to perform a new delivery. Do we have any case though that says that you can have this ongoing obligation that would require him basically to check the terms every hour, every day? I don't know how often to see whether there'd been an update. Well, it's not every hour and every day. It's only when he goes to schedule deliveries. And that's notice that he had under the 2016 agreement that if he does perform deliveries after a new terms of service goes into effect, then he is accepting those terms of service. I understand it, and I may not. He, you can send him a notice of modification. And if he doesn't check and continues to work for you, then he has accepted whatever that was. I think that's fair, Your Honor. You don't have to give any kind of reasonable opportunity for him to, or some kind of notice, hey, there's in his email that there's a modification coming. Well, I do think that he does have a reasonable opportunity because he's given us that email account, and the terms of service are accessible within the app itself. That's in our declaration at paragraph seven. So he knows that when he goes to sign up for a new delivery block, if he is uncomfortable with whatever the terms of service might be at the time, that he should check within the app or within his email to see if there have been any updates. So he doesn't have to assent specifically to that modification or be given the opportunity to stop. He, he, he, or reject it. He can, if he just ignores it, then he's stuck. Well, if he does nothing further, he's not stuck. He has to actually use the app to... He has to click the box, as I understand. Yeah, that's what... Well, he did have to click the box initially, and he doesn't dispute that he did so in 2016. But I just want to... I'm sorry, go ahead and answer, then I have another question. But was there next, another box where he says... There was not another box in 2019, but he did have to click that he wanted to perform deliveries in 2020, which he did. My question was a follow-on to Judge Friedland's, and that is, is there any evidence... I didn't see any, but I may be missing something. Is there any evidence as to what the subject line was for the 2019 terms of service? The subject line of the email is not in the record, Your Honor. To go back to your question, Judge Friedland, about cases that are on point, we did cite cases both in the district court and on appeal that are from district courts that I think are on point here. The Gibbs v. Stinson case was another case where a defendant was arguing that there were new terms of service that they emailed out to the plaintiffs in that case. And the plaintiffs said, well, we can't know that those were accepted because the emails sending out those terms aren't in the record. But the district court in that case said, merely contesting the sufficiency of the defendant's evidence when they say that they sent the emails. If you haven't denied that you got the email or that you assented to the new terms, that's not enough to defeat the notice... to make a notice objection. And I think that's consistent with California law as well. The Sprunk v. Prisma case is a court of appeal decision from California, where the court there said similarly, you can't just contest the sufficiency of the evidence if, at face value, it shows what the defendant needed to show as a prima facie burden. You have to actually at least deny that that evidence is accurate. But you're basically asking us to adopt that for the first time at the appellate level, right? We don't have a federal appeals court case that has already said that. At least from our circuit, it may be any. Is that right? As far as I can recall, there is the Schnabel v. Trilegent case from Second Circuit, which arose in a different context. It was a consumer purchase, I think, decision. It may have been an employment decision. I don't remember. But in any event, there wasn't a preexisting contractual obligation to stay informed of updates. And the Second Circuit there distinguished that and said, that may be relevant to what a reasonable user could be expected to have notice of. So I don't know that there's a court of appeals decision from the federal circuits. But as I say, the California court of appeal decision is out there already, the Sprunk case. And I think both sides agree that this is an issue that the court can look to California law to resolve. Can I ask you a question about our appellate jurisdiction? Sure. What is the basis for our appellate jurisdiction? So as our briefing notes, there are actually two separate statutes that provide appellate jurisdiction here. And the first that I'll mention today is 28 U.S.C. 1292A. And this court held in the Aloha Airlines case that that statute provides jurisdiction over orders denying a motion to compel arbitration. And Planoff doesn't dispute that this court has already held that. He just says that you shouldn't follow that case. Right, well my, but that was, if I understand it, that was before the Gulfstream decision by the Supreme Court. And I may have this wrong, but my understanding is that there are about, there are a number of circuits that have held since Gulfstream, that orders denying stays or motions to compel arbitration are not appealable under 1292A. There is a circuit split on that, Your Honor. Already a circuit split, or are you- There is. The Fourth Circuit has held, consistent with this court's prior decision in Aloha Airlines, that 1292 continues to provide jurisdiction in these circumstances. And I would just note that the Gulfstream decision from the Supreme Court got rid of what was called the Enloe-Edelson Doctrine, which is different from what this court was relying on in Aloha Airlines. The court there distinguished Enloe-Edelson, which really goes to stays of litigation, rather than motions to compel arbitration. And it had, it relied on the distinction between law and equity. And the Supreme Court got rid of that in Gulfstream. But this court wasn't relying on that. And I would just note that this court has, since both the adoption of Section 16 in the FAA and Gulfstream, relied on 1292 to sustain jurisdiction in these circumstances. And I'd note the Brazil versus Victim Services case from 2017. It's 878 F3rd 759, where jurisdiction was asserted under 1292 and Section 16. The second- Sorry, what was that case? It was Brazil, B-R-E-A-Z-E-A-L-E versus Victim Services. And that's from 2017. And the site is 878 F3rd? 759. And that's which circuit? This circuit. This circuit? Yes, Your Honor. Okay. But, so I think 1292 is a straightforward way of resolving the federal jurisdiction issue. We also note that Section 16 of the FAA provides jurisdiction. The statute there says that orders denying arbitration under the FAA are appealable on the face of the order here. That's what this district court decision did. So can I ask you about this, though? That argument depends on your motion to compel arbitration having been brought under the FAA. And it doesn't seem like this motion was because you argued under state law that the state contract required arbitration. Well, the district court did find that our motion was pursuant to the Federal Arbitration Act or Delaware law. That's at ER- But are we bound by that characterization? It seems like a legal question, not a factual question. It seems like on the face of it, your motion was about state law. So the district court could say it was anything. But I don't know why that would bind us. Well, I think that just with a question of issue preservation, normally the Court of Appeals gives some weight to the district court's interpretation of the party's pleadings. But even if it weren't binding on the first page of our motion to compel arbitration, we asserted that the FAA continued to govern, even though this court had held otherwise in the Rittman case. And I think that that's enough. Well, aren't we bound by the Rittman case? Well, actually, it's right now that there are a lot of cases that are addressing whether the Supreme Court's recent decision in Southwest Airlines v. Saxon changes the standard here. That's not presented in this appeal. And we would urge the court not to address that question because the FAA's applicability on the substance of the appeal is academic here. Either under the FAA or under state law, we need to show that there's an arbitration agreement between the parties and that it applies in these circumstances. And so it doesn't matter whether the FAA or the California Arbitration Act applies for the substance of our appeal. To go back to your question, Judge Friedland, I think one of the cases that plaintiff cites on the FAA is Sherwood v. Marquette transportation from the Seventh Circuit. And there, the way that they formulate it, like how much does a party need to invoke the FAA in order to trigger jurisdiction, the court there said that if the parties disagree about the scope of the Federal Arbitration Act's coverage, the motion seeking a stay is one under Section 3 of the FAA. And it's clear, at least, that the parties disagreed here over the FAA applying to this contract. And Amazon preserved its rights to challenge that if there were further developments under the Supreme Court or Ninth Circuit law, which we think there has been, but that's not an issue before this court. I see that my clock's running down. Unless the court has further questions on jurisdiction, I'd like to pivot to the second issue on appeal, the scope of the arbitration clause, because it's common ground between the parties that the 2016 terms of service is binding here. It also has an arbitration clause, and the question is whether it covers the dispute in this case. We think it does because it's written to capture any dispute that relates in any way to plaintiff's Amazon Flex work. The phrases it uses are performance of services or participation in the program. And I think that if you look at the complaint, from start to finish, there are many allegations showing that this dispute is tied to plaintiff's participation in the Amazon Flex program. If he weren't an Amazon Flex participant, we wouldn't be here. He wouldn't have been in the Facebook groups, and Amazon would have had no interest in his activity on Facebook. Say that UPS also has Flex drivers, and they were also in the chat room.  Not as framed in the complaint, Your Honor, because it's integral to his claim that the groups are limited to Amazon Flex drivers, and that's how he goes to show that Amazon wasn't supposed to be there. He says that in his brief on appeal, and he cites paragraph 16 of the complaint. Why isn't that just sort of a coincidence to the tort theory? Because it's essentially like a surveillance privacy claim, which could exist if there were also UPS and FedEx Flex drivers in the same chat. Amazon might still want to know what they're talking about. I'm just not sure why it matters. I mean, it happens that he says this was all Amazon people, but it's not like really part of the theory. I think it is part of the theory, Your Honor, because each of his claims depends on a lack of consent to Amazon's being allegedly in the groups. And the way that he alleges that is by saying the groups are closed off to anyone who's not an Amazon Flex driver. That's paragraph 16 that he cites for that proposition of his complaint. And so if Amazon, if those groups were open to more of an Amazon Flex drivers, then he wouldn't have that same argument that Amazon wasn't supposed to be there. Well, what if he just said it was only open to delivery Flex drivers? Well, it would be a different complaint at a minimum, Your Honor. But he also, I think, and I think this explains why the class definition here incorporates Flex drivers into, I'm sorry, the Rule 23 proposed class is limited under paragraph 30 of the complaint to Flex drivers in the United States. And I think this is why, because the participation in the program is key to the alleged lack of authority for Amazon to be in the Facebook groups. And I think another thing I'd point out on this, Your Honor, is that on page 50 of Plaintiff's Brief, I think he concedes that participation in the program is ambiguous. He says it could either apply to official aspects of the program, or it can apply to unofficial aspects of the program, like communicating with coworkers about the program. And so I think if that's true, we should win because of the presumption of arbitrability. A long line of California cases say that if the arbitration clause can be construed as susceptible to a construction that applies to this dispute, well then that dispute is required, that interpretation is required. And I think he's come pretty close to conceding that. How do you distinguish this from the Howard v. Goldbloom case, where the stock at issue came from employment and there was an employment contract, but the ownership of the stock didn't relate to the employment? Two distinctions with that case, Your Honor. The first is that the California Court of Appeal emphasized that there was a separation agreement, whereby, or maybe it was called a release, whereby all of the employment-related disputes were put behind the party. And that helped the court conclude that the dispute before it in that case was not an employment-related dispute. And secondly, the clause there is actually narrower than our clause here, because here we have very broad language saying arising out of or relating in any way to the agreement. I'm sorry, go ahead. Because there it's also arising out of and relating to. Yeah, but I think it's the thing that comes after that phrase, Your Honor. And I can't remember what exactly it is in Howard, but here we have three different things, the agreement, participation in the program, or performance of services. And I think those two, the second and third categories have to mean something else besides what would be in the Howard case, where there was an employment relationship, employment. There are two separate categories, and we think here that given the nature of the Facebook groups, which on their face, just the- So you think that this was related to his performance of the deliveries? That this dispute is related to his performance of services. Yes, Your Honor, because those are part of the discussion, according to the complaint, that takes place within the Facebook groups. All right. So I take it if he got hit by a UPS, by an Amazon delivery car, that that would be outside of this, but that's about it. Well, I don't know that that's about it, but I think, yes, if he were just walking down the street one day, I think that would be outside this. I think there are other possibilities as well. But I think that this one, given the fact that these groups are centered around the Amazon Flex program, is covered within the agreement. Thank you.  but let's hear from- Thank you. I appreciate it, Your Honor. Thank you. Can you all hear me okay? All right. Thank you. Good morning, Your Honors. Max Roberts for plaintiff. Hold on one second, though. You are tall and we want to make sure that this gets on the live stream. So let's just pause for a second. Do we need to adjust the microphone? Do you think? Okay. Okay. I've heard that one before. Good morning, Your Honors. Max Roberts for plaintiff appellee, Dricky Jackson. Your Honors, while the district court was correct to deny Amazon's motion to compel arbitration, this court need not reach the merits of this decision because there's no jurisdiction to hear it. As Mr. Kienle just said, Amazon cites two bases for jurisdiction, 9 U.S.C. section 16 and 28 U.S.C. section 1292. And neither decision provides for — neither statute provides for jurisdiction. What about Aloha Airlines? Where are we with that case? Sure, Your Honor. So Mr. Jackson's position is that Aloha Airlines is no longer good law in light of the enactment of section 16. So previously, there was some uncertainty as to whether the denial of a motion to compel arbitration was appealable under section 1292. And in 1983, the Aloha Airlines court held that it was. It was 19 — I thought it was 1985. But am I wrong? It's right around there. Maybe I got it wrong. It was before the enact — in any event, Your Honor, it was before the enactment of section 16 in 1988. And as the Tenth Circuit has recognized in the In Re Universal case, section 16's enactment abdicates 1292 as a basis for appellate jurisdiction over denials of motions to compel arbitration. And the reasoning for that is, as nine circuit courts have held, if a denial for a motion to compel arbitration was appealable, it would allow for a whole host of other decisions to suddenly become appealable just because a litigant had to expend certain monies to prosecute a case. So — so I can understand if we were a circuit that had said there was no jurisdiction under 1292, why maybe this argument would make more sense. But I'm having trouble understanding why, given that we said it is appealable, a statute that comes in and also says things are appealable undermines the idea that the thing is appealable. So, Your Honor, two points on that. First, the Tenth Circuit in In Re Universal also had previously held that 1292 was a basis for jurisdiction. But after the enactment of section 16, it abdicated that prior reasoning. And two is that if 1292 was still a basis for appellate jurisdiction for denials of motions to compel arbitration, it would render section 16 superfluous. So it would just mean that there's two statutes that govern appellate. Circuit split. So it's only superfluous in our circuit, maybe in the Fourth or something. It's not superfluous everywhere, right? That would be correct, Your Honor. But Mr. Jackson would maintain that the correct reading is what the Ninth Circuits have held. And it would not be superfluous if we were to conclude that this is not appealable under section 16. That's — well, so on that point, Your Honor, as you were sitting on the panel that decided the Kuntat case. And in that case, the Ninth Circuit held that state law is not a grounds for an appeal of a motion of a denial for a motion to compel arbitration. The FAA's policy cannot expand so far as to cover state law arbitration. Right. But my point being, it's not superfluous if there's no ability to appeal under section 16. But there is under 1292. So I don't understand for that reason why it would be considered superfluous. This might, in fact, be the perfect example of when it's not. So respectfully, Your Honor, I think the problem with that argument is that the reasons why a denial for a motion to compel arbitration — that is a mouthful to say — under state law would be appealable apply equally to Federal law. So if the reasoning is, well, a denial of a motion under state law is equivalent to the denial of injunctive relief, that would apply equally to Federal law. And yet that would put us right back in the predicament that I'm talking about, which is that a motion to compel arbitration or the denial of a motion to compel arbitration just means expending litigation expenditures. And that cannot be the basis for appeal because it would render something like an ordinary motion-to-stay appealable. But Aloha said, right, we have our Miller v. GAMI rule that we can't defy what a prior panel said unless something has changed. And it's hard to see how a statute that said the same thing changed it. Your Honor, I think we would just rest on the briefing on that issue. Talk about, could you turn to the scope of the arbitration agreement? And because it is a remarkably, I'm looking at the 2016 terms of service and that is a remarkably broad arbitration clause that deals with any dispute or claim, whether based on contract, common law, or statute arising out of, or relating in any way to a list of things, including your participation or your performance of services. Sure, Your Honor. It is certainly a broad arbitration clause, but the use of the word relating to does not make it infinite. As Justice Friedland was pointing out earlier, these claims are just a mere coincidence that the plaintiffs are flex drivers, they're talking about work. These claims would exist regardless of whether Mr. Jackson was in a group of all dog lovers, if he was just talking about dogs. Even if there was another third part of the issue of consent doesn't depend on whether, you know, he's- Well, but that, if the claim relates in any way to his participation in the program, that dog walking isn't relating to his participation in the program. So I don't see why that hypothetical is even relevant, because they're not talking about dog walking, they're not talking about their favorite, you know, football teams. They're talking about things that pertain, at least in part, to work and to their participation in the program. Because, Your Honor, what Mr. Jackson is speaking about is not what the claims turn on. The acts that are aggrieved of here is that Mr. Jackson was posting on a private Facebook group, in his private time, off work, and Amazon surveilled on that group without consent. Those are the facts that give rise to the claim, not the substance of the communications. Now, this case might be different if, for instance, this was an Amazon-sanctioned social event where all Amazon Flex drivers were there, and Amazon happened to be spying on the workers at this work-sanctioned social event, or if they were communicating via the Amazon Flex app. But that's not the facts that we have here. And so I would refer this Court to the decision, Welch v. My Left Foot Children's Therapy, 871 F3D 791, 9th Circuit, 2017, which is a decision that actually Justice Schroeder sat on. Is that in your briefing? No, Your Honor. Would you submit a 28-J with that citation, please? Yes, Your Honor, absolutely. Thank you. But so what that decision holds, Your Honors, is that just because you have a clause that says, relates to employment, that doesn't mean that you arbitrate claims that wouldn't exist but for your employment. And so in that case, you had a false claims act. And what the employer was trying to argue was the employee wouldn't have this information but for her employment. And what this Court held was she would still have the claim regardless because the aggrieved of conduct is not her employment, it's the fact that the company's submitting fraudulent Medicare bills. And that decision followed decisions by the Fifth Circuit and the Eleventh Circuit, and was subsequently followed by the Second Circuit. What was the nature of the clause, though? How broad was the clause in that case? Your Honor, I would have to double-check, but I believe it was arising out of or relating to employment. And notably, there was another clause that was even broader that this Court held didn't apply for differing reasons. But it was any dispute that you have with your employer or your employer has with you. That is an infinitely broader clause, and that's not the kind of clause that we have here. We don't have a dispute that says any claim that Mr. Jackson must have against Amazon must be arbitrary. That's not the clause that we have here. But in those Fifth and Eleventh Circuit cases that followed, there was a sexual assault that occurred on off-hours but on employment property. And the courts there held those clauses didn't cover the dispute because this employee would have the claim regardless of whether the fact that she was an employer, an employee, regardless of who the assaultant was. It just so happened that it occurred on property. And so as Justice Friedland pointed out, it's just a coincidence. The facts of this case do not — the claims in this case don't turn on what Mr. Jackson is talking about, and they don't turn on the fact that the group is populated with Amazon flex drivers. Again, he'd have the claim regardless of who he was and what he was talking about. Alito Can I ask you about why you didn't file a declaration saying you didn't get the e-mail? Zuckerman Absolutely, Your Honor. I was just about to turn to that issue. So as this Court noted in the Stover case, it is Amazon's burden to demonstrate each and every element of a contract, including mutual assent. And if and only if Amazon meets that burden, is Mr. Jackson required to submit notice. And they did not meet that burden. And they didn't meet that burden for several reasons. First, because the e-mail simply says that it was sent — or the declaration says that it was sent an e-mail to Mr. Jackson. It doesn't say that Mr. Jackson was provided notice. And notably, it doesn't let us know what the e-mail actually looked like. And that wasn't Mr. Jackson's burden to submit the e-mail. It was Amazon's burden in the first instance to say, hey, this is what we actually sent to you. This provided notice to you. And then if they did that, Mr. Jackson would have to say, oh, well, you know, the terms and conditions are not highlighted or they're not in blue or all those types of arguments. And that's not only in accord with this Court's prior decisions, like in the Nguyen case, talking about browser app. That's in accord with what Amazon did in that declaration for 2016. Because if you look at the 2016 declaration or the 2016 terms of service on page 168 of the record. Oops, wait for you to turn there. So if you look at that declaration, Amazon said, this is what the screen looked like when Mr. Jackson came to the app. This is the button that he would have clicked on. This is how the button appeared. So Amazon knows how to meet its burden of notice. But once you have entered a contract that says that there can be updates and describes ways that you agree to the updates. Could it be a lower level of notice that's required? I mean, just because they realized they had to show we entered a contract at all. I'm not sure that means that the updates are exactly the same. No, Your Honor, for at least two reasons. The first is that in that very contract in section 13, Amazon says that we may modify the contract by providing notice to you. So if Mr. Jackson doesn't have notice, he has no duty to read. And second, that's in accord with case law from the circuit. So, for instance, the Douglas case from that the circuit decided back in 2007. So if this court held that, yes, if you have notice, you have a duty to read the contract. But if notice has been never provided to you, you don't have that same duty. And so is it a matter of contract interpretation here? What notice means, though? Like, do we it's it's the 2016 contract that says, if you know, we'll give you notice. And so we have to understand what they meant by notice. Your Honor, can you rephrase the question? I'm not sure. I'm just wondering if like general cases about when there's sufficient notice. Are relevant or whether what we have to think about is what did this contract? What did the parties mean in this contract when they agreed to this notice of updates clause? Your Honor, so what the contract seemed to say is that we may provide notice to you through the app or by other means. And I think one of those means would be email. But it doesn't mean that simply sending out an email or, you know, posting a terms and conditions to the app provides notice. That would be governed by the case law. And so this Court would need to evaluate whether the email was designed in a certain way or had the right subject matter or pointed Mr. Jackson's attention to the updated terms of service. And there's a big difference between what Your Honor pointed out earlier, which is, you know, free pizza coupons for Amazon Flex drivers. And somewhere buried in there, there's a hyperlink that contains the updated terms of service. An email that says, updated terms of service, please see attached. And we don't know what the email says because Amazon didn't submit it as it was Amazon's burden. But you probably do know because he's your client and they say they sent it. And usually emails that are sent are received. So why haven't they sort of shifted the burden by saying we sent it to him and then he can explain why he didn't notice it because the subject line was weird or something like that? Your Honor, because we've disputed it. Well, first of all, we've disputed that he received it. But secondly, because- Well, have you, though? This is what I'm asking. I don't see any evidentiary submitted that evidentiary submission, like no declaration saying I never received this. I don't think I've seen that. Is there something like that? Your Honor, we argue it in the briefing that Mr. Jackson did not- Well, you say he didn't get notice in the briefing, I think. But that begs the question of what notice is. Like, have you ever said he didn't even get the email? Yes, Your Honor. That is said in the briefing. We say that he did not- That's not helpful if it's not in the record as evidence, as sworn evidence. It's not a matter for legal argument. He either received it or he didn't. But that's a fact. But I'm also not even sure it's true. Because I think you said they haven't shown he got the email. But have you said in your brief he didn't get the email? Because if you did, I don't remember where. We might have said, Your Honor, that they didn't show that he got the email. But that would be Amazon's burden in the first instance to demonstrate that. But that's a different question. So have you ever said, presented anything that he didn't get the email? No, Your Honor. However, it would be Amazon's burden in the first instance to show- So if the things that they did show lead to a natural inference that it was received, then why doesn't the burden then shift to your client? It's sort of like we mailed it and here, you know, we put it in the mail with postage prepaid and we dropped it in the mailbox at, you know, the headquarters of the post office in San Jose. Then it, the other person then has to come in and say, I didn't receive it. And why isn't it just like that? Your Honor, if the facts led to the natural conclusion that Amazon might have provided Mr. Jackson notice, then yes, the burden would shift to us. But Amazon hasn't gone that far. Do you know what the notice said? No, Your Honor. And that's exactly the problem is if we don't know what the notice said and the way that it notified Mr. Jackson, it cannot be said that Amazon met his burden. And just two quick points, Your Honor. I see my time is almost up. Is that OK? Yes, please go ahead. So Amazon cites to the Gibbs case. But the issue in the Gibbs case was that the plaintiff had already consented in large part to the fact that this particular terms applied. And the declaration said that he received it. Amazon also cites to the Sprunk case, but the distinguishing fact in the Sprunk case is they put into the record a signed agreement by the plaintiff. The only issue was whether the declaration said either you're, you know, everybody in the class signed either this agreement or this other agreement. Here's the signed version that your client signed. Later, we introduced this other one and everyone else signed that. That's sufficient. But you can see there and in every single case that Amazon cites other than Gibbs, the defendant is putting into the record the actual email. And as the Stark case held, that email, what that said provides a world of difference because it was just burying the lead. There's nothing that can be said that Mr. Jackson had noticed. Simply sending the email is not enough. And that's also what the Schnabel case held is that in the Second Circuit, that simply sending an email is not enough. You have to do something more. And whether that's putting something in the declaration to say that Mr. Jackson had noticed or actually submitting the email to show that Mr. Jackson had noticed, that's how you meet your burden. And because Amazon did not do that here, the district court was correct to conclude that the 2016 terms applied. Unless Your Honor has further questions, thank you for your time. Thank you very much. Let's do two minutes for rebuttal. Thank you, Your Honor. I appreciate the rebuttal time. On the scope of the agreement issue, I did go back and look at Howard v. Goldbloom in there. The distinguishing factor is that the arbitration clause said relating to your employment. That was why the court concluded that the securities law, breach of fiduciary duties issues were not related to the employment. Here, the language is different because it extends to disputes relating in any way to performance of services or participation in the program. And we do think this qualifies. I think it's notable that the title of the Facebook groups themselves refer to the Amazon Flex program. And that's alleged in the complaint at paragraph 20. If this were a case about accessing Facebook groups that talked about Flex drivers dog walking, I think Amazon would have a much harder case on the merits as well as a much harder case to compel arbitration. Well, the whole gravamen of the complaint is that the purpose of the spying, I'll use that term, is to determine potential unionizing activity, which Amazon wants to discourage. And it's all about, you know, terms and conditions of employment. It's certainly about the work of the Amazon Flex drivers. It's not about their dog walking or anything else. On the question of notice, the cases that plaintiff is principally relying on, cases like Nguyen, Douglas, those are cases where there's not a preexisting contractual agreement that specifies how the agreement may be updated and what sort of notice suffices. I do think it's a question of contract interpretation, Judge Friedland. And I think here, the contract in Section 15 of the 2016 contract, that is, says that Amazon will make the terms of service available within the app. And so I think that's why it's important here that the declaration not only talks about the email, but also talks about the terms being accessible within the app. And if plaintiff were unable or to discern what the email was communicating about the 2016 terms of service or didn't receive the email, they could have said so. And their briefing does not actually say they didn't receive it. It just says that we didn't show that they received it. Thank you. Thank you, Your Honor. I appreciate the court's indulgence. Thank you both sides for the very helpful arguments in this difficult case. This case is submitted.
judges: SCHROEDER, GRABER, FRIEDLAND